UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CLYDE H. GUNN, III                                                                                      PLAINTIFF

V.                                                              CIVIL ACTION NO. 1:07CV478-LTS-RHW

LEXINGTON INSURANCE COMPANY,                                                              DEFENDANTS
HALLIWELL ENGINEERING ASSOCIATES, INC.,
MORPHY, MAKOFSKY, INC., AND JOHN AND
JANE DOES A-H

**ORDER**

There are several motions before the Court in this cause of action. The issues raised by them are not new. This order addresses all motions pending and fully briefed at the time of entry, which are as follows: Defendant Lexington Insurance Company's (Lexington) [51] Motion for Summary Judgment (the docket sheet and motions list show entry [74] as a supplemental motion for summary judgment, when it is really not a separate motion but only a supplement to the original [51]); Plaintiff's [78] Motion for Partial Summary Judgment; Plaintiff's [80] Motion *in limine* Regarding Use and Effect of Payments Made Under Flood Policy; and Plaintiff's [81] Motion to Exclude Expert Witness Testimony and Reports.

In addition to Lexington, Plaintiff's [1] Complaint alleged theories of recovery against Halliwell Engineering Associates and Morphy, Makofsky, Inc., two engineering firms which performed inspections and issued reports for Lexington on the damage caused by Hurricane Katrina to Plaintiff's residence at 615 East Beach Drive, Ocean Springs, Mississippi. Halliwell Engineering Associates and Morphy, Makofsky, Inc. have been dismissed by [22] stipulation.

Plaintiff and Lexington have provided the Court with an enormous amount of material in support of and opposition to the [51] motion for summary judgment–indeed, far more than necessary. While the Court is now more knowledgeable about the nomadic lifestyle of independent adjusters and whether a particular structure is a barn or an equipment shed, for example, much of what is in the exhibits is not relevant at this point. Highlighting this condition of the record is the relative brevity of the parties' respective memoranda. Nevertheless, inasmuch as Fed. R. Civ. P. 56 contemplates that a case need not be fully adjudicated on the motion and that all the relief asked for may not be granted, summary judgment is an important tool to formulate and simplify the issues, as well as to facilitate the just, speedy, and inexpensive disposition of the action. *See* Fed. R. Civ. P. 16. It is with these concepts in mind that the Court considers these dispositive motions.

Plaintiff is an attorney who was alone at his residence on the morning of August 29, 2005. Although he did not remain there during the entirety of the storm, wisely opting to escape,

it is his contention that high-velocity winds and/or tornado(es) spawned by Hurricane Katrina caused the bulk of the damage to his dwelling.  These windstorm events would be covered under his Lexington homeowners policy.  He also attributed accidental direct physical loss–the actual policy language–to numerous felled trees resulting from Katrina's fury.  Plaintiff was not present at his home when flood water crested.

Plaintiff argues that there is strong evidence to support his claim for maximum homeowners policy benefits, which for all coverages are more than $1,000,000.00.  This includes his eyewitness account, the elevation of his property and its distance from the Mississippi Sound, and expert opinions.  He also believes that Lexington's initial adjuster's recommendation that full payment be made under the policy should be binding, in spite of the fact that the report on which this recommendation is based concluded that it was not possible to determine which damages resulted from flood and which from wind, and that the original adjuster acknowledged that it was for the insurance company to make a determination as to payment under the policy .

Lexington, on the other hand, emphasizes that its policy, like most others considered by the Court, excludes damage from flood,  and also that the first reports submitted on Plaintiff's claim (including the initial adjuster's report mentioned above and from subsequent inspections, some of which were made at a time when the property had been cleaned) did not separate excluded flood from covered wind damage.  Lexington eventually tendered payments to Plaintiff (which he refused to accept) for what it asserted was the amount due for covered, substantiated losses.   During the course of this litigation, Lexington, over Plaintiff's [37] objection, was allowed to deposit into the registry of the Court what it believes is all that is owed under the policy, $34,022.88 (representing the replacement cost less the deductible and depreciation).

Lexington's motion for summary judgment is primarily aimed at Plaintiff's claims of fraud and entitlement to punitive damages.  As for the former, Plaintiff's fraud claims are so general and conclusory that they do not satisfy the requirements of Fed. R. Civ. P. 9(b).  Plaintiff has presented no evidence that he relied to his detriment on representations at the time he procured the policy, *see generally Leonard v. Nationwide Mutual Insurance Co.*, 483 F. Supp. 3d 684 (S.D. Miss. 2006), *aff'd*, 499 F.3d 419 (5th Cir. 2007), *cert. denied*, 2008 WL77718 (2008), or on any after the claim was made; indeed, Plaintiff, rejected any payment based on Lexington's assessment and seeks additional policy benefits.  *See generally McIntosh v. State Farm Fire and Casualty Co.*, No. 1:06cv1080 (docket entry [1185]).  Summary judgment is appropriate on the fraud theory, as well as on the conspiracy proposition.  *Id.*

The same conclusion applies to Plaintiff's demand for punitive damages.  The amount of flood water is almost as  hotly disputed as the damage it caused, with a range of 2 to 8 or 9 feet.  One explanation of this is that there is no settled water line.  Shortly before the end of September 2005, an on-site inspection was made by Richard Lafosse, a certified adjuster for the National Flood Insurance Program (NFIP), on Plaintiff's flood claim.  Plaintiff would prefer the exclusion of evidence, testimony, or argument relating to the payment of proceeds under his NFIP flood policy (that is the topic of Plaintiff's [80] motion *in limine* discussed in more detail *infra*).  Lafosse has testified that he presented a flood claim questionnaire to Plaintiff at the time of the inspection, and he is adamant that Plaintiff filled it in (with a representation of 6 to 7 feet of

water) and signed it.  Plaintiff is equally convinced that he signed the form but did not make the entry, and that the questionnaire was not a sworn proof of loss, which was not required under the NFIP to receive flood payments.  Regardless, there is no indication that Plaintiff has returned the flood benefits he was paid ($250,000 for the dwelling and $73,000 for its contents), and it appears that he requested that the checks be reissued for the purpose of modifying the payee.  It is Lafosse's opinion that the flood damages exceeded the flood policy limits; that was the sole purpose of his inspection, it not being his job to perform a wind damage assessment.

The facts giving rise to this dispute cannot be considered in a vacuum.  The issue of any engineer's or adjuster's personal liability is not before the Court.  This cause of action is between Plaintiff and Lexington arising under a contractual relationship, with Lexington owing obligations to Plaintiff, including the implied duty of good faith and fair dealing, and the legal responsibility to fairly evaluate his claims and respond appropriately.

Photographs of the Plaintiff's residence reflect that the first floor was virtually gutted and the second floor sustained less damage.  Lexington obtained differing reports on the cause of the damage and tried to make payments to Plaintiff.  Plaintiff maintains that he is owed the limits of his homeowners policy.

The record in this case reveals a legitimate dispute over cause and the amount of covered damages sustained by Plaintiff.  There is no substantial evidence that Lexington was attempting to improperly exclude wind as a cause; instead, the evidence indicates that Lexington made several attempts to learn what physical damage was due to a covered event, as well as determine what physical damage was due to an excluded peril.  It was entirely appropriate for Lexington to hire engineers.  Plaintiff is entitled to dispute Lexington's and the engineers' opinions and conclusions, but these conclusions were reached in a legitimate way and were not the result of bad faith, malice, or gross negligence that would warrant punitive damages.  *See generally Broussard v. State Farm Fire and Casualty Co.*, 2008 WL 921699 (5th Cir. 2008).

Plaintiff acknowledges that, in connection with his [78] Motion for Partial Summary Judgment and his [80] motion *in limine*, case law this Court is presently bound to follow is not in his favor.  The Fifth Circuit Court of Appeals has ruled that anti-concurrent cause clauses are not ambiguous or contrary to public policy.  *Tuepker v. State Farm Fire & Casualty Co.*, 507 F. 3d 346 (5th Cir. 2007); *Leonard, supra.*  The Mississippi Supreme Court may one day let the Fifth Circuit know what grade it will receive on its *Erie* guess, but for now this Court is not going to "reach a different result," as urged by Plaintiff.  However, the parties should understand that the Court intends to apply the anti-concurrent cause language consistent with the decisions in *Dickinson v. Nationwide Mutual Fire Insurance Co.*, No. 1:06cv198 (docket entries [145] and [150]).

Plaintiff further admits that this Court has decided in other Hurricane Katrina litigation that acceptance of flood proceeds may be a judicial admission of the extent of flood damage.  Again in search of a "different result," Plaintiff relies on the collateral source doctrine and relevance.  According to Plaintiff [80], he "is not seeking a double recovery in this case.  Instead, he is seeking a determination that the evidence be limited to the issues."

This is not a matter of election of remedies, and there is no logic in saying that Plaintiff's receipt of flood insurance payment is meaningless.  Plaintiff is not prohibited from seeking entitlement to other benefits, namely for damage from a covered peril under his Lexington homeowners policy, yet he may not obtain the advantage of payment for an excluded–and mutually exclusive–peril covered by a separate policy and prevent that relevant information from any further exploration.  *See, e. g., Espinosa v. Nationwide Mutual Fire Insurance Co.*, No. 1:06cv896 (docket entry [152]); *Dickinson, supra*.  There is good reason these so-called different legal theories have not been offered before: they do not apply in this hurricane insurance setting.

Finally, Plaintiff attempts to exclude under the discovery rules what he labels as "expert" reports, including some that were prepared during the investigation of the claim and prior to the institution of litigation.  The frontispiece of these various reports show that they were prepared for Lexington by one-time defendant Halliwell Engineering Associates.  (As an aside, Plaintiff and Lexington filed a [55] Joint Motion to Amend Scheduling Order for additional time to conduct discovery; the Magistrate correctly limited the time allowed for this process.)  Even Lexington's [77] Supplemental Designation of Experts at the end of this time frame does not appear to be new, for it names an earlier identified individual and provides his signed and sealed report.

It is the Court's determination that Plaintiff's [81] motion is more concerned with form over substance.  His procedural objections do not call for the exclusion of testimony or other evidence.

Accordingly, **IT IS ORDERED**:

Lexington's [51] Motion for Summary Judgment is **GRANTED IN PART** (as to claims based on fraud, conspiracy, and with respect to punitive damages) **AND DENIED IN PART**, and for docket control purposes the "motion" at docket entry [74] is **TERMINATED**;

Plaintiff's [78] Motion for Partial Summary Judgment is **DENIED**;

Plaintiff's [80] Motion *in limine* Regarding Use and Effect of Payments Made Under Flood Policy is **DENIED;**

Plaintiff's [81] Motion to Exclude Expert Witness Testimony and Reports is **DENIED**.

**SO ORDERED** this the 12th day of May, 2008.

s/ L. T. Senter, Jr.
L. T. SENTER,JR.
SENIOR JUDGE